UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIELLE KICKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:18-CV-1016-SPM |
| | ) | |
| | ) | |
| | ) | |
| ANDREW M. SAUL, [1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final

decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner")

denying the application of Plaintiff Danielle Kicker ("Plaintiff") for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*

(the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant

to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was not supported by

substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and

remand the case for further proceedings.

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to
Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill
as defendant in this action. No further action needs to be taken to continue this suit by reason of
the last sentence of 42 U.S.C. § 405(g).

## I.    PROCEDURAL BACKGROUND

In March 2015, Plaintiff applied for DIB and SSI, alleging an inability to work since January 11, 2015. (Tr. 182-97). Her applications were initially denied. (Tr. 118-24). On August 27, 2015, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") (Tr. 125-26). A hearing was held before the ALJ on May 1, 2017. (Tr. 45-97). On the same day, Plaintiff amended her alleged disability onset date to August 5, 2015. (Tr. 225). On October 31, 2017, the ALJ issued an unfavorable decision. (Tr. 14-39). On October 31, 2017, Plaintiff filed a Request for Review of Hearing Decision with Defendant agency's Appeals Council. (Tr. 181). On May 9, 2018, the Appeals Council denied Plaintiff's Request for Review. (Tr. 2-7). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II.    FACTUAL BACKGROUND

On May 1, 2017, Plaintiff testified at the hearing before the ALJ as follows. Plaintiff was born on October 17, 1977. (Tr. 51). She drives on a daily basis, but does not drive long distances, because her feet will fall asleep. (Tr. 51). She has three children, aged 6, 10, and 18, and she lives with her mother, her grandmother, and her two younger children. (Tr. 52). She has completed some beauty college. (Tr. 53). Her most recent job was verifying applications for Obamacare. (Tr. 53). She stopped working there in August 2015, when she went out for back surgery, and she was on short-term disability in late 2015. (Tr. 54). She never returned to work after her back surgery. (Tr. 55). Plaintiff has also worked in the past as a preschool teacher, a manager in retail, and a pharmacy tech. (Tr. 77-80).

Plaintiff testified that the conditions that keep her from going back to work are her feet, her hands, and her back. (Tr. 55). Her pain in her right foot is at a six or seven on a scale of one to ten, and it has been going on since late 2016. (Tr. 56). Plaintiff also testified that her hands going to

sleep has been happening for about six months. (Tr. 57). With regard to her back, Plaintiff testified that since her September 2015 back surgery, she has back pain, it "feels like everything is out of order again," she sometimes cannot stand up straight, and she sometimes cannot sit or stand too long. (Tr. 57-58). She testified that she had some small improvement in her pain after surgery, but by the time of the hearing it was worse than it was before. (Tr. 58-59). Before surgery, she estimated her pain level to be about a five or six. (Tr. 58). At the time of the hearing, her back pain was a six to a seven. (Tr. 59). Her back pain is worsened by being on her feet and relieved by sitting down with her feet up on a massaging chair. (Tr. 60).

Plaintiff sees a psychiatrist, Dr. Aurora, every three months. (Tr. 60-61). Plaintiff takes medications including lithium, hydroxyzine, carbamazepine, lorazepam, and prasozine for nightmares. (Tr. 64-65). She testified that she does not have any side effects from her medications. (Tr. 65). Plaintiff testified that her memory is "pretty good," her concentration is fair, and she remembers to take her medications each day. (Tr. 66). She gets nervous around crowds of people but gets along pretty well with family and friends. (Tr. 66).

With regard to the medical records, the Court accepts the facts as reflected in the parties' respective statements of facts. The Court will cite to specific portions of the record as needed in the discussion below.

### III.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e), 416.945(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.960(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## IV.    THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 5, 2015, the amended alleged disability onset date; that Plaintiff had the severe impairments of residuals of spinal fusion, obesity, post-traumatic stress disorder, and depression/bipolar disorder; and that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 20). The ALJ found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can lift and carry and push and pull ten pounds occasionally and less than ten pounds frequently. she can sit for eight hours in an eight-hour workday. She can stand and/or walk for two hours in an eight-hour workday. She can reach overhead with the bilateral upper extremities for four hours per day. She can climb stairs occasionally, but never ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, and crouch, but never crawl. She must avoid working at unprotected heights. She is limited to work that involves simple and routine tasks. She can frequently interact with the public, coworkers and supervisors.

(Tr. 22). At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 31). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as document preparer, electronic sub assembler, and alarm monitor. (Tr. 31-32). Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from the amended alleged onset date through the date of the decision. (Tr. 32).

## V.    DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) that the ALJ failed to properly consider the opinion of Plaintiff's treating physician, Dr. David B. Robson; (2) the ALJ failed to explain the evidence that supports the RFC; and (3) the ALJ failed to properly consider the credibility of Plaintiff's subjective complaints.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564

F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial

evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate

to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting

*Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the

Commissioner's decision, the court considers both evidence that supports that decision and

evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence

presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of

testimony, as long as those determinations are supported by good reasons and substantial

evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If,

after reviewing the record, the court finds it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's

decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d

785, 789 (8th Cir. 2005)).

### B. The Opinion of Dr. Robson

Plaintiff's first argument is that the ALJ failed to properly evaluate the opinion of her

treating doctor, Dr. David Robson. On April 24, 2017, Dr. Robson completed a Physical RFC

Questionnaire for Plaintiff. (Tr. 1015-19). He noted that he had seen her between July 2015 and

March 2016; that her diagnoses were "instability L5-S1" and "disc protrusion C4-5"; and that her

symptoms were constant neck and low pain at a self-reported 7 on a scale of 1 to 10. He noted that

her clinical findings and objective signs are a healed fusion L5-S1; disc protrusion on MRI; and

reduced range of motion in the lumbar and cervical spine. (Tr. 1015). He noted that Plaintiff's

treatment has included surgery and narcotic pain medications. (Tr. 1015). He also noted that

Plaintiff's conditions were affected by depression and psychological factors. (Tr. 1016). He

checked a box indicating that Plaintiff's impairments were not reasonably consistent with the symptoms and functional limitations described in the opinion.

Dr. Robson opined that Plaintiff's pain and other symptoms will be severe enough to interfere with attention and concentration needed for simple work tasks constantly. (Tr. 1051). He opined that Plaintiff could sit for an hour at a time; could stand for an hour at a time; could sit for four hours and stand/walk for four hours total in an eight-hour workday; would need to walk around every 60 minutes for one to five minutes; and would need be able to shift positions at will. (Tr. 1016). He also opined that Plaintiff needs unscheduled five-minute breaks every hour; that Plaintiff could carry less than ten pounds frequently, ten pounds occasionally, 20 pounds rarely, and never 50 pounds; that Plaintiff did not have limitations in looking up and down or in reaching, handling, fingering, or use of hands and fingers; and that Plaintiff could reach overhead 50% of the workday. (Tr. 1017). He opined that Plaintiff would never be absent from work as a result of her impairments or treatment. (Tr. 1017).

After discussing Dr. Robson's opinion in some detail, the ALJ stated:

> As a treating source to the claimant, the undersigned gives some evidentiary weight to the findings of limitations and opinions by Dr. Robson, as they are generally consistent with the record as a whole, including the findings within his own treatment records. However, Dr. Robson's finding regarding pain constantly interfering with attention and concentration is inconsistent with the fact that he noted the pain severity is self-reported by the claimant and no noted findings in the record of deficits in attention or concentration due to pain or any other impairment. Dr. Robson noted that the claimant needed unscheduled breaks every hour is also not consistent with the record as a whole, including Dr. Robson's own treatment records, which note that the claimant was working as an application processor during his period of treatment, which was less than one year in duration.

(Tr. 28).

Plaintiff argues that the ALJ erred by failing to explain why she did not credit Dr. Robson's findings, and that some of the reasons the ALJ offered for discounting Dr. Robson's opinions were not supported by the record.

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[2] Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ may discount a treating physician's opinion where, for example, "other medical assessments are supported by better or more thorough medical evidence," *Goff*, 421 F.3d at 790 (internal quotation marks omitted), or the opinion "is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009).

"When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (internal quotation

---

[2] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Plaintiff filed her application in 2014, so the Court will apply the version of the regulations that applies to claims filed before March 27, 2017.

marks omitted). *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). The failure to give good reasons for discrediting a treating physician's opinion is grounds for remand. *See Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand"); *Clover v. Astrue*, No. 4:07CV574–DJS, 2008 WL 3890497, at *12 (E.D. Mo. Aug. 19, 2008) ("Confronted with a decision that fails to provide 'good reasons' for the weight assigned to a treating physician's opinion, the district court must remand.").

After careful review, the Court agrees with Plaintiff that the ALJ did not give good reasons, supported by substantial evidence, for discounting Dr. Robson's opinions. Significantly, one of the reasons the ALJ offered for discounting Dr. Robson's opinions—that Plaintiff "was working as an application processor during his period of treatment"—was based on an erroneous reading of the record. The Court acknowledges that notes from Dr. Robson and a physician's assistant in his office consistently contain the following statement, in the "Social History" section: "Work: Occupation—application processor for Healthcare.gov: review applications and clear them for approval of coverage. She is working without restrictions. Her company does not have light duty available, and she denies any work related injury." (Tr. 467, 474, 478, 484, 488, 492, 496). However, a closer review of these notes shows that that statement was a part of Plaintiff's history that remained static from visit to visit, rather than a statement of her current situation. In the section of the treatment records that changed from visit to visit, the same records that indicate Plaintiff was "working without restriction" almost always also indicate that Plaintiff "is to remain off work," is "unable to work," or something substantially similar. (Tr. 475, 479, 486, 490, 494, 498). Additionally, Plaintiff testified that she did not return to work after August 2015, but rather was

10

on short-term disability. (Tr. 54-55). The record also contains evidence that Plaintiff received short-term disability payments from August 15, 2015, to February 10, 2016. (Tr. 301). It is clear from the record that Plaintiff was not, in fact, working as an application processor during the period when Dr. Robson was treating her.

The Court next considers whether this error requires reversal. The Eighth Circuit has noted that "[w]hile a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.'" *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (quoting *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000)). For several reasons, the Court cannot conclude that the ALJ's error had no practical effect on the outcome of the case.

First, the error concerns a matter that is highly relevant to the appropriate weight to be given to Dr. Robson's opinions. If the ALJ believed that Plaintiff was working as an application processor during the period when Dr. Robson was treating her, that would have provided a very strong reason to discount his opinions regarding her need for multiple unscheduled breaks and her ability to function in the workplace generally. Thus, it appears likely that this error may have had a significant effect on the ALJ's assessment.

Second, this is not a situation where the ALJ offered several other specific, persuasive reasons for discounting the treating source's opinions, such that the Court might be able to conclude that the ALJ would have reached the same conclusion absent the one erroneous reason. Although the ALJ noted generally that Dr. Robson's opinion regarding the need for unscheduled breaks was "not consistent with the record as a whole, including Dr. Robson's own treatment records" he did not cite to any specific inconsistencies other than the erroneous statement that she

was working as an application processor. The ALJ also did not provide any reasons at all for his decision to discount the ALJ's opinion that Plaintiff could only sit for one hour at a time, could only sit for four hours total in an eight-hour workday, would need a sit/stand option, and could only reach overhead for 50% of the workday. (Tr. 22).

Third, this is not a case where the ALJ discounted Dr. Robson's opinions because she found another medical opinion in the record was better supported. Dr. Robson's opinion was the only medical opinion evidence in the record that addressed the effects of Plaintiff's back pain on her ability to work.

Fourth, the vocational expert's testimony indicates that if the ALJ had given weight to Dr. Robson's opinions regarding Plaintiff's need for unscheduled five-minute breaks, Plaintiff would not have been employable. (Tr. 96). Thus, had the ALJ reached a different conclusion with regard to Dr. Robson's opinion, the outcome of this case may well have been different.

For all of the above reasons, the Court finds that remand is required for further consideration of the opinion of Dr. Robson's opinions. *See Anderson* 312 F. Supp. 2d at 1194 (remanding for the ALJ to provide justification for the weight assigned to a treating physician's opinion); *Clover*, No. 4:07CV574–DJS, 2008 WL 3890497, at \*12 (same). On remand, the ALJ should re-evaluate Dr. Robson's opinions in light of the record and the relevant factors. The Court recognizes that is possible that, on remand, the ALJ may come to the same conclusion with regard to the appropriate weight to give to Dr. Robson's opinion. However, such a decision must be supported by good reasons and substantial evidence.

Because the ALJ's re-evaluation of Dr. Robson's opinions and treatment records on remand may affect her RFC assessment and her assessment of Plaintiff's subjective complaints, the Court need not address Plaintiff's remaining arguments.

## VI.  CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of September, 2019.